## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ELI LONG MALAVE,**

     **Petitioner,**

v.                                                              **Case No. 3:21cv130-MCR/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,[1]**

     **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On January 19, 2021, Petitioner Eli Long Malave, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On August 30, 2021, Respondent filed an answer, with exhibits.  ECF No. 11.  Petitioner has filed a reply.  ECF No. 12.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  The

---

[1]The Clerk of Court shall substitute Ricky D. Dixon as Secretary of the Florida Department of Corrections.  Ricky D. Dixon succeeded Mark S. Inch as Secretary for the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Procedural Background

Petitioner Eli Long Malave challenges his conviction and sentence from the First Judicial Circuit, Okaloosa County, Florida, following his entry of a guilty plea in case number 2014-CF-2312.  ECF No. 1 at 1; *see* Ex. D2 (Plea and Sentencing Agreement).[2]  In particular, by amended information filed May 19, 2015, the State of Florida charged Malave with one count of sexual battery while in a position of familial or custodial authority, to a child twelve (12) years of age or older, but less than eighteen (18) years of age, contrary to section 794.011(8)(b), Florida Statutes (2013), in connection with events that occurred between August 1, 2013, and July 31, 2014.  Ex. D1 (Amended Information).   Signed May 21, 2015, the negotiated Plea and Sentencing Agreement provided, among other things, that Malave entered a guilty plea and would be sentenced to fifteen (15) years in prison, followed by fifteen (15) years of probation and designation as a sexual predator.  Ex. D2.   The court conducted a colloquy and accepted the plea, finding it freely and voluntarily entered.  Ex. D5 at 6-11, 24.  At a hearing held June 16, 2015,

---

[2]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 11.

the court sentenced Malave in accordance with the plea agreement. Ex. D3; Ex. D4 at 3-4. Malave did not appeal his judgment and sentence.

On June 13, 2016, Malave, represented by counsel, filed a pro se motion for post-conviction relief in the state trial court pursuant to Florida Rule of Criminal Procedure 3.850, alleging six claims of ineffective assistance of counsel (IAC). Ex. D6. The next day, through counsel, Malave filed a motion for post-conviction relief pursuant to Rule 3.987, Ex. D7, and, on June 17, 2016, Malave's counsel filed a verified motion for post-conviction relief under Rule 3.987, Ex. D10. On June 21, 2016, Malave's counsel filed a motion for leave to file verified motions for postconviction relief, Ex. D8, which the court granted by order on September 20, 2016, Ex. D9. The court also struck the three postconviction motions as facially insufficient and allowed sixty (60) days to amend. Ex. D9.

Ultimately, on November 9, 2016, Malave, through counsel, filed a Rule 3.850 motion for postconviction relief, alleging eight IAC claims. Ex. B1 at 7-36. By order on February 1, 2018, the state post-conviction trial court summarily denied all the claims. *Id*. at 89-102 (exclusive of attachments).

Malave, through counsel, appealed the denial of post-conviction relief to the First District Court of Appeal (DCA), Ex. B1 at 137, and filed an initial brief raising five points in case number 1D18-1090, Ex. B2. The State filed

a notice that it would not file an answer brief.  Ex. B3.  On March 13, 2019, the First DCA per curiam affirmed the appeal without a written opinion.  Ex. B4; <u>Malave v. State</u>, 278 So. 3d 579 (Fla. 1st DCA 2019).  The mandate issued April 3, 2019.  Ex. B5.

On May 2, 2019, Malave filed a pro se motion to correct illegal sentence in the state trial court.  Ex. C1 at 9-17.  By order on April 7, 2020, the court denied the motion.  *Id*. at 18-21 (exclusive of attachments).  Malave sought rehearing, *id*. at 39-42, and the court denied that motion on April 30, 2020, *id*. at 43-45.  Malave appealed to the First DCA, assigned case number 1D20-1707.  *Id*. at 46-47.  On December 4, 2020, the First DCA per curiam affirmed the case without a written opinion.  Ex. C2; <u>Malave v. State</u>, 309 So. 3d 659 (Fla. 1st DCA 2020).  Malave filed a motion for rehearing, Ex. C3, which the First DCA denied by order on January 20, 2021, Ex. C4.  The mandate issued February 10, 2021.  Ex. C5.

As indicated above, on January 18, 2021, Malave filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  ECF No. 1.  He raises ten grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – Report of Dr. Keefe**:  "The state court's denial of Petitioner's claim that counsel failed to submit State's case to adversarial testing resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding," where "trial counsel failed to share key discovery items" with Petitioner, particularly the report of Dr. Lynn Keefe, M.D., who examined the victim.  ECF No. 1 at 4.

(2) **IAC – Failure to Depose Dr. Keefe**:  "The state court's denial of Petitioner's claim that counsel failed to depose state's expert witness resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where "trial counsel failed to depose Dr. Lynn Keefe and to challenge her reports which were biased in favor of the prosecution."  *Id*. at 5.

(3) **IAC – Dr. Cooley**:  "The state court's denial of Petitioner's claim that counsel failed to investigate and prepare the case resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where "Petitioner was never advised about the existence of any information from any doctor examination, and was completely left in the dark, and was only continually forced to take the plea."  *Id*. at 6.  Specifically, "[t]rial counsel failed to subpoena the records of Dr. Candace Cooley, M.D., who was the one who examined the alleged victim, and was named in the Physical Examination report prepared by Dr. Keefe."  *Id*.  Counsel also failed to interview and depose Dr. Cooley.  *Id*.

(4) **IAC – Family Members of Petitioner**: "The state court's denial of Petitioner's claim that counsel failed to investigate potential defense witnesses resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where "[t]rial counsel failed to interview and call members of the Petitioner's family who were living in the residence at the time

of the alleged crimes," who "would have testified that they did not see any events nor hear any sounds that substantiated the sexual allegations made by the alleged victim." *Id*. at 7-8.

(5)  **IAC – Failure to Interview and Depose Victim**:  "The state trial court's denial of Petitioner's claim that counsel failed to investigate the alleged victim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where "[t]rial counsel failed to interview and depose the alleged victim," who had "made threatening statements to the Petitioner which demonstrated her motivation and negative intentions to cause harm to Petitioner." *Id*. at 9.

(6)  **IAC – Allowing Plea to Crime Not Supported by Evidence**: "The state court's denial of Petitioner's claim that counsel failed to have a proper legal understanding of the charge resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where "[t]he facts of this case did not support the charged offense" and "[t]he State would not have been able to prove an element of the crime," because Petitioner "did not have a Familial relationship to the alleged victim." *Id*. at 10.

(7)  **IAC – Consequences of Plea**:  "The state court's denial of Petitioner's claim that counsel failed to advise Petitioner of the parameters of the charge resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where counsel "never told him about any consequences of taking the plea, he just pressured him into it saying it was in his best

interest given the damning evidence the State had to use against him if he proceeded to trial." *Id*. at 11.

(8) **IAC – Statements by Victim**:  "Postconviction counsel was ineffective in failing to raise claim that trial counsel was ineffective in failing to investigate and examine defense witness[es] Charlie Maholan and Lauren Holland who would have testified that alleged victim admitted she lied about engaging in sexual activity with Petitioner." *Id*. at 12.

(9) **IAC – Social Media Posts by Victim**:  "Postconviction counsel was ineffective in failing to raise claim that trial counsel was ineffective in failing to investigate and examine defense witness Charlie Maholan concerning alleged victim's admission on social media website Facebook that she wanted to recant her accusations that Petitioner engaged in sexual activity with her." *Id*. at 14.

(10) **IAC – Cumulative Error**:   "The state court's denial of Petitioner's claim of cumulative error resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law and/or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," where "[c]ounsel's representation and numerous errors resulted in cumulative effects of a negative nature." *Id*. at 15.

On August 30, 2021, Respondent filed an answer, with exhibits.  ECF No. 11.  Petitioner has filed a reply.  ECF No. 12.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id*.

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

The Strickland test applies to IAC claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of

the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Id*. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).   "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'"  *Id*. at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258 (1973)).

## **Ground 1:  IAC – Report of Dr. Keefe**

In his first ground, Petitioner Malave asserts his trial counsel provided ineffective assistance by not sharing with him "key discovery items," particularly the report of Dr. Lynn Keefe, M.D., who examined the victim. ECF No. 1 at 4.   Malave asserts Dr. Keefe's report "contained errors," including "multiple hearsay allegations concerning interactions of Petitioner" and others.  *Id*.  Malave asserts counsel "did not discuss the State's evidence with [him] and only accepted without challenge or scrutiny, the State's evidence and its presumed accuracy."  *Id*.  He asserts that "[h]ad counsel not been ineffective in his performance, the petitioner would not have accepted the plea and would have proceeded to trial."  *Id*.

As Respondent indicates, Malave raised a similar claim in the first ground of his Rule 3.850 motion and in the appeal of the order denying that

motion.  Ex. B1 at 10-12; Ex. B2 at 11-15; *see* ECF No. 11 at 6.  In its order

ruling on the motion, the state post-conviction court set forth the Strickland

standard and denied the claim, making the following findings:

> Defendant claims that counsel rendered ineffective assistance for failing to investigate allegations made by the State.  Further, Defendant alleges that counsel "failed to share key discovery items with the Defendant," including a report by Dr. Lynn Keefe.  Defendant states that the report "contains factual errors as to the alleged events" and that had counsel shared the report with Defendant, he "would have been able to provide information negating the errors and also information that would have assisted trial counsel in the preparation of a defense to the charges."  For example, Defendant states that the report states that Defendant and the victim "had a sexual relationship which included oral sex and sexual intercourse" but that there "was never a sexual relationship between the parties."  Defendant states that "trial counsel's lack of case preparation forced the Defendant to accept the State's plea offer of fifteen years incarceration," and had "it not been for trial counsel's lack of adherence to professional norms, the Defendant would have proceeded to trial."

> As to Defendant's argument that counsel failed to investigate allegations made by the State, he is not entitled to relief.  Defendant entered a plea of guilty to the charge and affirmed under oath that he read and understood the plea agreement, had enough time to discuss the plea agreement with counsel, had all of his questions answered by counsel regarding the plea agreement, and was satisfied with counsel's representation.  *See* Clift v. State, 43 So. 3d 778, 779 (Fla. 1st DCA 2010) ("Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge.").

> To the extent Defendant argues that he was unaware of Dr. Keefe's report at the time he entered the plea agreement, he

is not entitled to relief.  Although Defendant alleges that the report erroneously stated that he had a sexual relationship with the victim and that, had he been aware of the report, he would have informed counsel that he never had a sexual relationship with the victim, Defendant entered a plea of guilty to the charge and stated under oath at the plea colloquy that he had sexual contact with the victim.  Further, Defendant affirmed under oath that he had read the probable cause affidavit and that the facts alleged in the probable cause affidavit were true.  The probable cause affidavit alleged that Defendant had sexual intercourse with the 14-year old victim "approximately 30 to 40 times," "had the victim give him oral sex about five times," "inserted his fingers" into the victim's vagina, and "used his hands and fingers to molest" the victim's breasts.  Consequently, Defendant's assertion that Dr. Keefe's report erroneously stated that he "had a sexual relationship which included oral sex and sexual intercourse" is not well-taken.  *See* Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006) (stating that a defendant "is not entitled to go behind sworn representations made to the court in a postconviction proceeding").

Accordingly, Issue 1 is denied.

Ex. B1 at 91-92 (footnotes to plea agreement and affidavit omitted).

On appeal, the First DCA affirmed without a written opinion.  Ex. B4;

Malave v. State, 278 So. 3d 579 (Fla. 1st DCA 2019) (table).   This

adjudication on the merits is entitled to AEDPA deference under 28 U.S.C.

§ 2254(d), even though no reasoning is set forth in the decision.  *See* Richter,

562 U.S. at 99 ("When a federal claim has been presented to a state court

and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr.,

278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* <u>Wilson v. Sellers</u>, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

In particular, as the state post-conviction court found, Malave entered a guilty plea to the charge and stated under oath that he had sexual contact with the victim:

> THE COURT:  Please.  All right.  Raise your right hand, please, sir.
>
> (Defendant sworn)
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  All right.  And you can put your hand down.  You heard what Mr. Flaherty said, and you signed the written plea form?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  How old are you, sir, and how far did you go in school?
>
> THE DEFENDANT:  I'm 39, and I graduated from Troy State.
>
> THE COURT:  Are you able to read and understand the plea form?
>
> THE DEFENDANT:  Yes, sir.

THE COURT:  Did you do that before you signed it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Does the plea form contain the terms and conditions Mr. Flaherty announced?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand by this plea arrangement that you're plea[d]ing guilty to the charges?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  That says to me – well, first, have you seen and read the police report with the addendum of probable cause in it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And so by plea[d]ing guilty, that says to me, Judge, the facts alleged in that police report and the addendum of probable cause are true; I did the thing that it says I did.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  What is it that you did to support this guilty plea?

THE DEFENDANT:  I had sexual contact with a minor.

THE COURT:  All right.  And those are the facts related in the police report?

THE DEFENDANT:  Yes, Your Honor.

Ex. D5 at 6-7; *see* Ex. D11 (police report/probable cause affidavit).  Malave

told the judge that he understood that, by entering the guilty plea, he was

waiving his right to a trial and that no one had promised him anything.  Ex. D5 at 7-9.  He also understood he was waiving the right to challenge any mistakes by the court or his attorney during the case.  *Id*. at 9.  He indicated he was entering the plea, and giving up those rights, because he did not want to risk "[t]he chance that [he] may go to prison for even longer" and he believed the plea to be in his best interest.  *Id*.  He indicated he had enough time to talk with his attorney, his attorney had answered all his questions, and he was satisfied with how his attorney had represented him.  *Id*. at 9-10. The written plea agreement, signed by Malave, contains similar representations.  Ex. D2.

The record further supports the state post-conviction court's finding that Malave's "assertion that Dr. Keefe's report erroneously stated that he 'had a sexual relationship which included oral sex and sexual intercourse' is not well-taken.'"  Ex. B1 at 92.  As the court explained, and as indicated above, Malave affirmed under oath that he had read the probable cause affidavit and the facts therein were true.  *Id*.; *see* Ex. D11.  That affidavit alleged Malave had "sexual intercourse approximately 30 to 40 times" with the victim and "had the victim give him oral sex about five times."  Ex. D11. *See* Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well

as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *see also* <u>Stano v. State</u>, 520 So. 2d 278, 279-80 (Fla.1988) (affirming summary denial of Rule 3.850 motion and agreeing with trial court's finding: "Once the Defendant enters a plea of guilty before this Court, and assures the Court under oath that the plea is voluntary, the Court will not go behind the plea. The plea cuts off inquiry into all that precedes it. The Defendant is barred from contesting events happening before the plea.").

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### <u>Ground 2</u>:  IAC – Failure to Depose Dr. Keefe

In his second ground, Petitioner Malave asserts his trial counsel provided ineffective assistance by not deposing Dr. Keefe, "to challenge her

reports which were biased in favor of the prosecution." ECF No. 1 at 5. He asserts that due to this failure, he "was forced to accept the State's plea offer." *Id*.

As Respondent indicates, Malave raised a similar claim in the second ground of his Rule 3.850 motion and in the appeal of the order denying that motion. Ex. B1 at 13-17; Ex. B2 at 16-21; *see* ECF No. 11 at 6. The state post-conviction court denied the claim, making the following findings:

> Defendant argues that counsel rendered ineffective assistance for failing to depose Dr. Keefe. Defendant alleges that a deposition of Dr. Keefe "was necessary to educate the prosecutor as to the weaknesses of the case and to also make significant progress in working toward a negotiated plea agreement with the State." Defendant alleges that "cancelling the deposition left the defendant in the spot of not being able to make an informed decision as to accept a plea or to proceed to trial." Defendant states that "almost immediately after cancelling the deposition of [Dr.] Keefe, the charge was increased from a second-degree felony to a first-degree felony." Defendant states that the "prejudice to the Defendant was an increased sentence."

> Defendant's claim is facially insufficient because he does not allege with specificity what Dr. Keefe would have said had she been deposed or how her deposition testimony would have differed from her report. *See* Rosa v. State, 27 So. 3d 230, 230-31 (Fla. 2d DCA 2010) (stating that the trial court correctly found a claim that counsel rendered ineffective assistance for failing to depose witnesses before trial as facially insufficient where the defendant "failed to allege with particularity what these witnesses would have said had they been deposed or how their deposition testimony would have been different from their trial testimony"). Further, Defendant's claim is facially insufficient because he has not alleged the requisite prejudice. *See* Zakrzewski v. State, 866 So. 2d 688, 694 (Fla. 2003).

Nevertheless, even if the claim had been facially sufficient, Defendant would not be entitled to relief because he entered a plea of guilty to the charge and affirmed under oath that he read and understood the plea agreement, had enough time to discuss the plea agreement with counsel, had all of his questions answered by counsel regarding the plea agreement, and was satisfied with counsel's representation. *See* Clift v. State, 43 So. 3d 778, 779 (Fla. 1st DCA 2010) ("Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge.").

Accordingly, Issue 2 is denied.

Ex. B1 at 93-94 (footnote to plea agreement omitted).

On appeal, the First DCA affirmed without a written opinion. Ex. B4; Malave v. State, 278 So. 3d 579 (Fla. 1st DCA 2019) (table). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as explained in the analysis of Ground 1, *supra*, the record reflects that Malave entered a guilty plea to the charge and stated under oath that he had sexual contact with the victim. Ex. D5 at 6-7; *see* Ex. D11 (police report). Malave told the judge that he understood that, by entering the guilty plea, he was waiving his right to a trial and that no one had promised him

anything.  Ex. D5 at 7-9.  He also understood he was waiving the right to challenge any mistakes by the court or his attorney during the case.  *Id*. at 9. He indicated he was entering the plea, and giving up those rights, because he did not want to risk "[t]he chance that [he] may go to prison for even longer" and he believed the plea to be in his best interest.  *Id*.  He indicated he had enough time to talk with his attorney, his attorney had answered all his questions, and he was satisfied with how his attorney had represented him.  *Id*. at 9-10.  The written plea agreement, signed by Malave, contains similar statements.  Ex. D2.  *See* <u>Blackledge</u>, 431 U.S. at 73-74; <u>Stano</u>, 520 So. 2d at 279-80.

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### <u>Ground 3</u>:  IAC – Dr. Cooley

In his third ground, Petitioner Malave asserts his trial counsel provided ineffective assistance by failing "to investigate and prepare the case," specifically by failing to interview, to depose, and "to subpoena the records of Dr. Candace Cooley, M.D., who was the one who examined the alleged

victim, and was named in the report prepared by Dr. Keefe." ECF No. 1 at 6. He asserts that if defense counsel had "done so there is a reasonable probability that exonerating information would have been available" as "the victim had conveyed to Dr. Cooley that she was sexually active with others, and had never mentioned the Petitioner." *Id*. at 6-7. Malave asserts that "counsel had this information in the report but failed to disclose it to Petitioner," and had counsel done so, Malave would not have accepted the plea. *Id*. at 7.

As Respondent indicates, Malave raised a similar claim in the third ground of his Rule 3.850 motion. Ex. B1 at 18-20; *see* ECF No. 11 at 7. The state post-conviction court denied the claim, making the following findings:

> Defendant argues that counsel failed to subpoena records from, interview, or depose Dr. Candace Cooley. Further, Defendant argues that counsel "failed to inform his client of the existence of the *Cooley Report* as trial counsel did not share any discovery materials with his client." Defendant argues that had counsel deposed Dr. Cooley, "counsel would have had at his disposal exonerating information concerning the alleged sexual activity of the alleged victim." Specifically, Defendant states that Dr. Cooley would have testified that the victim "was sexually active but did not name the Defendant as the person the victim was sexually active with." Defendant alleges that had he "had this information at his disposal," he would not have entered the plea agreement and would have proceeded to trial.
>
> As to defendant's argument that counsel failed to subpoena records from, interview, or depose Dr. Cooley, he is not entitled to relief. Defendant entered a plea of guilty to the charge and affirmed under oath that he read and understood the

plea agreement, had enough time to discuss the plea agreement with counsel, had all of his questions answered by counsel regarding the plea agreement, and was satisfied with counsel's representation.  *See* Clift v. State, 43 So. 3d 778, 779 (Fla. 1st DCA 2010) ("Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge.").

To the extent Defendant argues that he was unaware of Dr. Cooley's report at the time he entered the plea agreement, he is not entitled to relief.  Although Defendant alleges that he would not have entered the plea agreement and would have proceeded to trial had he been informed of Dr. Cooley's report, Defendant has not alleged facts showing the requisite prejudice. Although Defendant does not specifically allege what information would have been contained in the report, for the sake of argument, the Court assumes that Defendant argues the report would have shown that the victim stated to Dr. Cooley that she was sexually active but that she did not identify Defendant as a sexual partner.  However, the probable cause affidavit states that the victim identified Defendant as a sexual partner in an interview with the Department of Children and Families, the Okaloosa County Sheriff's Office, and the Child Advocacy Center.  Further, Defendant stated under oath at the plea colloquy that he had sexual contact with the victim.  Moreover, defendant affirmed during the plea colloquy that he was waiving his right to a trial by jury and entering the plea agreement because he would receive a certain sentence under the plea agreement and there was a "chance" that he would receive a prison sentence "for even longer" if he proceeded to trial.  Consequently, the Court cannot find a reasonable probability that, had counsel informed him of Dr. Cooley's report, Defendant would not have entered the plea agreement and would have proceeded to trial.

Accordingly, Issue 3 is denied.

Ex. B1 at 94-95 (footnotes omitted).  On appeal, the First DCA affirmed without a written opinion.  Ex. B4.

Respondent asserts that Petitioner did not fairly present his federal constitutional claim to the First DCA because he did not cite to Strickland or any other federal authority in his appeal, and this ground is thus unexhausted and procedurally defaulted. ECF No. 11 at 7-8. In his reply, Malave asserts he exhausted the ground because he "mentioned two (2) Florida Supreme Court cases that explicitly construe[] Strickland . . . leav[ing] no doubt that the State Courts were on notice of the federal nature" of the claim. ECF No. 12 at 2. Even assuming the ground is exhausted, however, it lacks merit and should be denied.

The First DCA's affirmance constitutes an adjudication on the merits entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as explained in the analysis of Grounds 1 and 2, *supra*, the record reflects that Malave entered a guilty plea to the charge and stated under oath that he had sexual contact with the victim. Ex. D5 at 6-7; *see* Ex. D11 (police report). Malave told the judge that he understood that, by entering the guilty plea, he was waiving his right to a trial and that no one had promised him anything. Ex. D5 at 7-9. He also understood he was

waiving the right to challenge any mistakes by the court or his attorney during the case. *Id*. at 9. He indicated he was entering the plea, and giving up those rights, because he did not want to risk "[t]he chance that [he] may go to prison for even longer" and he believed the plea to be in his best interest. *Id*. He indicated he had enough time to talk with his attorney, his attorney had answered all his questions, and he was satisfied with how his attorney had represented him. *Id*. at 9-10. The written plea agreement, signed by Malave, contains similar statements. Ex. D2. *See* Blackledge, 431 U.S. at 73-74; Stano, 520 So. 2d at 279-80.

The record further supports the state post-conviction court's finding that Malave "has not alleged facts showing the requisite prejudice" and that no reasonable probability exists that, if defense counsel had informed him of Dr. Cooley's report, he would not have entered the plea and would instead have proceeded to trial. Ex. B1 at 95. As explained above, Malave affirmed under oath that he had read the probable cause affidavit, the facts therein were true, and he had "sexual contact" with the victim. *Id*.; *see* Ex. D11. The probable cause affidavit likewise indicates the victim, among other things, "admitted to having sex . . . and oral sex with Malave." Ex. D11.

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable

application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

**Ground 4**:  **IAC – Family Members of Petitioner**

In his fourth ground, Petitioner Malave asserts his trial counsel provided ineffective assistance because he "failed to investigate potential defense witnesses," specifically counsel "failed to interview and call members of Petitioner's family who were living in the residence at the time of the alleged crimes," who "would have testified that they did not see any events nor hear any sounds that substantiated the sexual allegations made by the alleged victim."  ECF No. 1 at 7-8.  He asserts that "[h]ad counsel's performance not been deficient, Petitioner would not have accepted the plea but would have proceeded to trial and proven his innocence."  *Id*. at 8.

As Respondent indicates, Malave raised a similar claim in the fourth ground of his Rule 3.850 motion.  Ex. B1 at 21-24; *see* ECF No. 11 at 9.  The state post-conviction court denied the claim, making the following findings:

> Defendant argues that counsel rendered ineffective assistance by failing to interview or depose the following members of his family residing in his home:  Musetta Malave, Jordan Malave, Bryson Malave, Titan Malave, Charlie Maholan, and Boarong Malave.  Defendant alleges that the victim "contended that she and the Defendant would regularly carry out sexual relations in the public areas of the residence and while other household members were in the residence."  Defendant

> states that each family member was available to testify and
> would have testified "that they did not see any events nor hear
> any sounds that would have tended to substantiate that sexual
> activity was occurring in public areas and within a few steps of
> where they were located in the family residence."  Defendant
> states that had counsel interviewed and deposed those family
> members, he "would have had additional exonerating evidence
> at his disposal" and would have proceeded to trial.
>
> Defendant is not entitled to relief.  Indeed, although
> Defendant alleges that the family members would have testified
> "that they did not see any events nor hear any sounds that would
> have tended to substantiate that sexual activity was occurring,"
> Defendant stated under oath at the plea colloquy that he had
> sexual contact with the victim and affirmed that the facts alleged
> in the probable cause affidavit, which includes an allegation that
> Defendant had sexual intercourse with the victim in various areas
> of his house, were true.  Moreover, Defendant entered a plea of
> guilty to the charge and affirmed under oath that he read and
> understood the plea agreement, had enough time to discuss the
> plea agreement with counsel, had all of his questions answered
> by counsel regarding the plea agreement, and was satisfied with
> counsel's representation.  *See* Clift v. State, 43 So. 3d 778, 779
> (Fla. 1st DCA 2010) ("Where a defendant enters a plea and
> swears that he is satisfied with his counsel's advice, he may not
> later attack counsel's effectiveness for failure to investigate or
> defend the charge.").  Accordingly, Issue 4 is denied.

Ex. B1 at 96-97 (footnotes omitted).  On appeal, the First DCA affirmed

without a written opinion.  Ex. B4.

Respondent asserts that Petitioner did not fairly present his federal

constitutional claim to the First DCA because he did not cite to Strickland or

any other federal authority in his appeal, and this ground is thus unexhausted

and procedurally defaulted.  ECF No. 11 at 9.  In his reply, Malave asserts

he exhausted the ground because he "mentioned two (2) Florida Supreme Court cases that explicitly construe[] Strickland . . . leav[ing] no doubt that the State Courts were on notice of the federal nature" of the claim.  ECF No. 12 at 2.  Even assuming the ground is exhausted, however, it lacks merit and should be denied.

The First DCA's affirmance constitutes an adjudication on the merits entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as explained in the analysis of Grounds 1, 2, and 3, *supra*, the record reflects that Malave entered a guilty plea to the charge and stated under oath that he had sexual contact with the victim.  Ex. D5 at 6-7; *see* Ex. D11 (police report).  Malave told the judge that he understood that, by entering the guilty plea, he was waiving his right to a trial and that no one had promised him anything.  Ex. D5 at 7-9.  He also understood he was waiving the right to challenge any mistakes by the court or his attorney during the case.  *Id*. at 9.  He indicated he was entering the plea, and giving up those rights, because he did not want to risk "[t]he chance that [he] may go to prison for even longer" and he believed the plea to be in his best interest.

*Id*.  He indicated he had enough time to talk with his attorney, his attorney had answered all his questions, and he was satisfied with how his attorney had represented him.  *Id*. at 9-10.  The written plea agreement, signed by Malave, contains similar statements.  Ex. D2.  *See* Blackledge, 431 U.S. at 73-74; Stano, 520 So. 2d at 279-80.

The record further supports the state post-conviction court's finding that Malave affirmed the facts alleged in the probable cause affidavit and the facts therein were true.  Ex. B1 at 96; *see* Ex. D11.  That affidavit alleged, contrary to Malave's assertions in this ground, that Malave had "sexual intercourse approximately 30 to 40 times" with the victim "in his residence," including "on the living room couch, kitchen floor, a counter in the kitchen and in Malave's bed."  Ex. D11.

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 5:  IAC – Failure to Interview and Depose Victim

In his fifth ground, Petitioner Malave asserts his trial counsel provided ineffective assistance by failing "to interview and depose the alleged victim,"

who had, among other things, "made threatening statements to the Petitioner which demonstrated her motivation and negative intentions to cause harm to Petitioner."   ECF No. 1 at 9.   As Respondent indicates, Malave raised a similar claim in the fifth ground of his Rule 3.850 motion.   Ex. B1 at 25-28; *see* ECF No. 11 at 11.

The state post-conviction court denied the claim, making the following findings:

> Defendant argues that counsel rendered ineffective assistance by failing to interview or depose the victim.  Defendant alleges that the victim "had made threatening statements" to Defendant and "offered several conflicting statements during the course of the investigation."  Specifically, Defendant states that the victim gave conflicting statements concerning when and how often the sexual acts occurred, whether she was coerced to perform sexual acts with Defendant, and whether Defendant had hit her.  Defendant states that absent counsel's alleged errors, he would not have entered the plea agreement and would have proceeded to trial.
>
> Defendant is not entitled to relief.  Defendant entered a plea of guilty to the charge and affirmed under oath that he read and understood the plea agreement, had enough time to discuss the plea agreement with counsel, had all of his questions answered by counsel regarding the plea agreement, and was satisfied with counsel's representation.  *See* Clift v. State, 43 So. 3d 778, 779 (Fla. 1st DCA 2010) ("Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge.").  Further, Defendant stated under oath at the plea colloquy that he had sexual contact with the victim and affirmed that the facts alleged in the probable cause affidavit, which includes an allegation that the Defendant had sexual intercourse with the victim, were true.  *See* Davis v.

State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006) (stating that a defendant "is not entitled to go behind sworn representations made to the court in a postconviction proceeding"). Accordingly, Issue 5 is denied.

Ex. B1 at 97-98 (footnotes omitted). On appeal, the First DCA affirmed without a written opinion. Ex. B4.

Respondent asserts that Petitioner did not fairly present his federal constitutional claim to the First DCA because he did not cite to Strickland or any other federal authority in his appeal, and this ground is thus unexhausted and procedurally defaulted. ECF No. 11 at 9. In his reply, Malave asserts he exhausted the ground because he "mentioned two (2) Florida Supreme Court cases that explicitly construe[] Strickland . . . leav[ing] no doubt that the State Courts were on notice of the federal nature" of the claim. ECF No. 12 at 2. Even assuming the ground is exhausted, however, it lacks merit and should be denied.

The First DCA's affirmance constitutes an adjudication on the merits entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as explained in the analysis of Grounds 1, 2, 3, and 4, *supra*, the record reflects that Malave entered a guilty plea to the charge and

stated under oath that he had sexual contact with the victim.  Ex. D5 at 6-7; *see* Ex. D11 (police report).  Malave told the judge that he understood that, by entering the guilty plea, he was waiving his right to a trial and that no one had promised him anything.  Ex. D5 at 7-9.  He also understood he was waiving the right to challenge any mistakes by the court or his attorney during the case.  *Id*. at 9.  He indicated he was entering the plea, and giving up those rights, because he did not want to risk "[t]he chance that [he] may go to prison for even longer" and he believed the plea to be in his best interest. *Id*.  He indicated he had enough time to talk with his attorney, his attorney had answered all his questions, and he was satisfied with how his attorney had represented him.  *Id*. at 9-10.  The written plea agreement, signed by Malave, contains similar statements.  Ex. D2.  *See* <u>Blackledge</u>, 431 U.S. at 73-74; <u>Stano</u>, 520 So. 2d at 279-80.

Malave's sworn statements at his plea hearing, and in his written plea agreement, belie his allegation that, if his attorney had deposed the victim and revealed threatening or conflicting statements by the victim, he would not have entered the plea and would have proceeded to trial.  As the state post-conviction court found, Malave affirmed the facts alleged in the probable cause affidavit and the facts therein were true.  Ex. B1 at 97-98; *see* Ex. D11. That affidavit alleged, contrary to Malave's assertions in this ground, that

Malave had, among other things, "sexual intercourse approximately 30 to 40 times" with the victim.  Ex. D11.

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### Ground 6:  IAC – Allowing Plea to Crime Not Supported by Evidence

In his sixth ground, Petitioner Malave asserts his trial counsel provided ineffective assistance because "[t]he facts of this case did not support the charged offense" and "[t]he State would not have been able to prove an element of the crime," where Petitioner "did not have a Familial relationship to the alleged victim."  ECF No. 1 at 10.  As Respondent indicates, Malave raised this claim in the sixth ground of his Rule 3.850 motion.  Ex. B1 at 29-32; *see* ECF No. 11 at 13.

The state post-conviction court denied the claim, finding:

> Defendant argues that counsel rendered ineffective assistance for failing to know or understand the elements of section 794.011(8)(b), Florida Statutes, which pertains to sexual battery while in a position of familial or custodial authority. Defendant states that the "facts of this case did not support the charge" and that the State "would not have been able to prove the element of having custodial authority."  Defendant states that he "did not have a custodial relationship to the alleged victim."

Defendant alleges that had he known "that he was not receiving a benefit of a bargain and that the State could not prove the charge he wouldn't have entered into the plea agreement."

Section 794.011(8)(b) prohibits a person from committing a sexual battery on a victim 12 years of age or older but younger than 18 years of age, where the person "is in a position of familial *or* custodial authority to" the victim.  The Florida Supreme Court stated "that the term 'custodial,' absent a statutory definition, must be construed in accordance with the commonly understood definition as one having custody and control of another." Hallberg v. State, 649 So. 2d 1355, 1358 (Fla. 1994).  Custodial authority has been found where the victim "had many contacts with the defendant," the victim had "ridden in his truck many times," the defendant "had daily contact with the victim's mother," and the victim's mother knew and approved that the victim was in the defendant's care the day the crime was committed.  *See* Collins v. State, 496 So. 2d 997, 999 (Fla. 5th DCA 1986).  "A familial relationship requires a recognizable bond of trust with the defendant, similar to a bond that develops between a child and his grandfather, uncle or guardian." Crocker v. State, 752 So. 2d 615, 616-17 (Fla. 2d DCA 1999) (internal quotation marks omitted).

It appears that Defendant's claim is facially insufficient because section 794.011(8)(b) refers to a person in a position of familial *or* custodial authority to the victim, and while Defendant alleges that the State could not have proved that Defendant was in a position of custodial authority to the victim, he does not allege that the State could not have proved that he was in a position of familial authority to the victim.  Nevertheless, even if Defendant's claim is facially sufficient, he is not entitled to relief for the reasons stated below.

As stated above, Defendant entered a plea of guilty to sexual battery while in a position of familial or custodial authority, and he affirmed under oath that the facts alleged in the probable cause affidavit were true.  Defendant's plea agreement states that the probable cause affidavit is incorporated by reference and agreed to by Defendant as forming a factual basis for the plea.

Although Defendant alleges that the State could not have proved that Defendant was in a position of custodial authority to the victim, the probable cause affidavit alleges that the victim "played softball for [Defendant] on a team" and that the victim told another student that "she was close to the coach and would go over to his house a lot." The probable cause affidavit alleges that Defendant's wife stated that the victim "was at their house three times during the week and on most weekends." The probable cause affidavit alleges that Defendant had sexual intercourse with the victim "approximately 30 to 40 times in his residence . . . ." The victim's mother testified under oath at Defendant's plea colloquy that the victim "was allowed to go to four people's houses ever in her whole life to spend the night" and that the Defendant "betrayed a trust." The victim's mother stated, "Because I was divorced and worked 12-hour shifts and had five children, I was so grateful that my daughter had a safe place to be." The victim's mother stated that although Defendant was not the victim's biological father, the victim "saw him as a father figure." Consequently, the Court finds that the record shows Defendant was in a position of familial or custodial authority over the victim. *See* Oliver v. State, 977 So. 2d 673, 677 (Fla. 5th DCA 2008).

Accordingly, Ground 6 is denied.

Ex. B1 at 98-100 (footnotes omitted). On appeal, the First DCA affirmed without a written opinion. Ex. B4; Malave v. State, 278 So. 3d 579 (Fla. 1st DCA 2019) (table).

Respondent asserts Malave abandoned this claim in his appeal of the order denying the Rule 3.850 motion and his failure to present it in the First DCA deprived the state courts of the opportunity to resolve the issue "by invoking one complete round of the State's established appellate review process." ECF No. 11 at 13; O'Sullivan, 526 U.S. at 845. Thus, Respondent

concludes, this ground is unexhausted and procedurally defaulted.  ECF No. 11 at 13-15.  In his reply, Malave asserts he exhausted the ground because he "mentioned two (2) Florida Supreme Court cases that explicitly construe[] Strickland . . . leav[ing] no doubt that the State Courts were on notice of the federal nature" of the claim.  ECF No. 12 at 2.  Even assuming it is exhausted, however, it lacks merit.

The First DCA's affirmance constitutes an adjudication on the merits entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as explained in the analysis of Grounds 1 through 5, *supra*, the record reflects that Malave entered a guilty plea to the charge of sexual battery while in a position of familial or custodial authority, and he stated under oath that he had sexual contact with the victim.  Ex. D5 at 6-7; *see* Ex. D11 (police report).  Malave told the judge that he understood that, by entering the guilty plea, he was waiving his right to a trial and that no one had promised him anything.  Ex. D5 at 7-9.  He also understood he was waiving the right to challenge any mistakes by the court or his attorney during the case.  *Id*. at 9.  He indicated he was entering the plea, and giving up

those rights, because he did not want to risk "[t]he chance that [he] may go to prison for even longer" and he believed the plea to be in his best interest. *Id*.  He indicated he had enough time to talk with his attorney, his attorney had answered all his questions, and he was satisfied with how his attorney had represented him.  *Id*. at 9-10.  The written plea agreement contains similar statements.  Ex. D2.  *See* <u>Blackledge</u>, 431 U.S. at 73-74.

The record further supports the court's finding that Malave affirmed the facts alleged in the probable cause affidavit and the facts therein were true. Ex. B1 at 99-100; *see* Ex. D11.  That affidavit alleged, among other things, that the victim "played softball for [Malave] on a team" and the victim told another student "she was close to the coach and would go over to his house a lot." Ex. D11.  The affidavit indicates Malave's wife confirmed the victim "was at their house three times during the week and on most weekends." *Id*.

In addition, the victim's mother testified under oath at the plea hearing that the victim "was allowed to go to four people's houses ever in her whole life to spend the night" and as she believed her "daughter had a safe place to be." Ex. D5 at 18.  The victim's mother also testified Malave "betrayed a trust" as the victim viewed Malave "as a father figure." *Id*.  The record thus supports the state post-conviction court's finding that Malave was in a position of familial or custodial authority over the victim.  *See, e.g.*, <u>Oliver</u>,

977 So. 2d at 676-77 (finding evidence "sufficient for the jury to conclude that Oliver was in a position of familial or custodial authority," where Oliver was twin victims' siblings' soccer coach, "[t]he girls looked up to Oliver as a father figure," "[t]hey trusted and confided in him," they "stayed overnight at Oliver's house babysitting on a regular basis" as "the twins' mother trusted Oliver enough to let them stay overnight at his home," where the incidence occurred, and "[t]hus, there was a recognizable bond of trust between Oliver and the girls similar to that of father and child").

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

## Ground 7:  IAC – Consequences of Plea

In his seventh ground, Petitioner asserts his counsel proved ineffective because he "never told him about any consequences of taking the plea, he just pressured him into saying it was in his best interest given the damning evidence the State had to use against him if he proceeded to trial."  ECF No. 1 at 11.  Respondent asserts Malave raised a similar claim in ground seven of his Rule 3.850 motion.  Ex. B1 at 33-34; *see* ECF No. 11 at 15.

The state post-conviction court denied the claim, finding:

> Defendant argues that counsel rendered ineffective assistance for failing to advise Defendant of the "full parameters of pleaing to a life felony . . . ." Specifically, Defendant alleges that counsel failed to advise Defendant "that upon his release from the Department of Corrections that he faced life in prison should he violate probation." Defendant alleges that had he known "of the life in prison possibility," he would not have entered the plea agreement and would have proceeded to trial. In its response, the State asserts that Defendant "was not charged with a life felony" and "did not plea to a life felony."
>
> The Court cannot find that counsel performed deficiently as to this claim. On May 19, 2015, prior to Defendant entering a plea, an amended information was filed charging Defendant with committing sexual battery while in a position of familial or custodial authority between August 1, 2013, and July 31, 2014. Prior to its amendment in 2014, section 794.011(8)(b) provided that sexual battery while in a position of familial or custodial authority was a first-degree felony. That section was amended, effective October 1, 2014, to provide that sexual battery while in a position of familial or custodial authority is a first-degree felony punishable by a term of years not exceeding life. Because Defendant's offenses were alleged to have occurred between August 1, 2013, and July 31, 2014, it appears that Defendant's claim is without merit. *See* <u>Quintana v. State</u>, 913 So. 2d 628, 630 (Fla. 3d DCA 2005) ("The applicable criminal penalties are those in effect at the date of the defendant's crime. Where, as here, the statute is amended between the crime date and the sentencing date, it is the statute in effect on the date of the crime which is controlling." (internal citation omitted)). Indeed, Defendant's plea agreement and the plea colloquy reflect that Defendant entered a plea of guilty to a first-degree felony. Accordingly, Ground 7 is denied.

Ex. B1 at 100-01 (footnotes omitted). On appeal, the First DCA affirmed without a written opinion. Ex. B4.

Respondent asserts that Petitioner abandoned this claim in his appeal of the order denying the Rule 3.850 motion. ECF No. 11 at 15. Thus, according to Respondent, Malave's failure to present it in the First DCA deprived the state courts of the opportunity to resolve the issue "by invoking one complete round of the State's established appellate review process." *Id*.; O'Sullivan, 526 U.S. at 845. Therefore, Respondent concludes, this ground is unexhausted and procedurally defaulted. ECF No. 11 at 15-17. In his reply, Malave asserts he exhausted the ground because he "mentioned two (2) Florida Supreme Court cases that explicitly construe[] Strickland . . . leav[ing] no doubt that the State Courts were on notice of the federal nature" of the claim. ECF No. 12 at 2. Even assuming it is exhausted, however, it lacks merit and should be denied.

The First DCA's affirmance constitutes an adjudication on the merits entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d 1245, 1254-55 (11th Cir. 2002). A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, the record supports the state post-conviction trial court's determination that the plea agreement and the transcript of the plea colloquy reflect that Malave entered a guilty plea to a first degree felony. Ex. B1 at

101; *see* Ex. D2.  The plea agreement signed by Malave specifically indicates that the maximum for the offense of sexual battery while in a position of familial or custodial authority is "30 YR DOC."  Ex. D2.  Indeed, at the time of the offense in this case, between August 1, 2013, and July 31, 2014, the applicable statute, section 794.011(8)(b), Florida Statutes (2013), provided that sexual battery while in a position of familial or custodial authority constituted a first degree felony.  As the court explained, a subsequent amendment to the statute, effective October 1, 2014, changed the offense to a first degree felony "punishable by a term of years not exceeding life"; however, the amended statute does not apply in this case as it took effect after the offense occurred.  *See, e.g.*, Quintana, 913 So. 2d at 630 (explaining, on rehearing, that "[t]he applicable criminal penalties are those in effect at the date of the defendant's crime" and "[w]here, as here, the statute is amended between the crime date and the sentencing date, it is the statute in effect on the date of the crime which is controlling").

Based on the foregoing, Petitioner Malave has not shown that the state court's rejection of the claims in this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground 8</u>:  IAC – Statements by Victim

In his eighth ground, Petitioner Malave asserts his trial counsel provided ineffective assistance for "failing to investigate and examine defense witness[es] Charlie Maholan and Lauren Holland who would have testified that [the] alleged victim admitted she lied about engaging in sexual activity with Petitioner" and his postconviction counsel was ineffective for not raising this claim.  ECF No. 1 at 12.  Respondent asserts this claim is unexhausted and procedurally defaulted; and, further, post-conviction counsel was not ineffective for not raising it because the claim is not "substantial."  ECF No. 11 at 17-18.

As Respondent asserts, Petitioner Malave did not exhaust this ground in state court, and it is procedurally defaulted.  *See* <u>O'Sullivan</u>, 526 U.S. at 845.  *See, e.g.*, <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable.").  In <u>Martinez</u>, the U.S. Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings

may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  566 U.S. at 9.

In particular, "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances":  (1) "[t]he first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial"; and (2) "[t]he second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland." *Id*. at 14.  The Court explained that, "[t]o overcome the default, a prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Id*. at 14.  The Court further explained that "[w]hen faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards."  *Id*. at 15-16.

Here, Respondent asserts the underlying IAC claims is not substantial. ECF No. 11 at 53.   Indeed, as Respondent indicates, Malave's sworn representations at the plea hearing, that he was guilty and that the facts in the police report and probable cause affidavit were true, belie his claims in this ground that, if counsel had investigated and examined statements the victim made to Charlie Maholan and Lauren Holland, Malave would not have entered a plea and would have proceeded to trial.

Based on the foregoing, Malave did not exhaust this ground in state court and it is procedurally defaulted.   He cannot rely on <u>Martinez</u> to excuse his procedural default because his underlying IAC claim is not substantial and his post-conviction counsel did not perform deficiently by not raising it in the Rule 3.850 proceedings.   *See, e.g.*, <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1263 (11th Cir. 2014) ("[T]o show that his habeas counsel failed to provide the level of representation required by <u>Strickland</u>, Hittson must show more than the mere fact that they failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims.").   This ground should be denied.

### <u>Ground 9</u>:  IAC – Social Media Posts by Victim

In his ninth ground, Petitioner Malave asserts his trial counsel provided

ineffective assistance for "failing to investigate and examine defense witness Charlie Maholan concerning [the] alleged victim's admission on social media website Facebook that she wanted to recant her accusations that Petitioner engaged in sexual activity with her" and his postconviction counsel was ineffective for not raising this claim.  ECF No. 1 at 14.  Respondent asserts this claim is unexhausted and procedurally defaulted; and, further, postconviction counsel was not ineffective for not raising it because the claim is not "substantial."  ECF No. 11 at 19-20.

As Respondent asserts, and as with Ground 8, *supra*, Petitioner Malave did not exhaust this ground in state court, and it is procedurally defaulted.  *See* O'Sullivan, 526 U.S. at 845.  *See, e.g.*, Henderson, 353 F.3d at 892; Smith, 256 F.3d at 1138.  As with Ground 8, Respondent asserts that because the underlying IAC claim is not substantial, post-conviction counsel was not ineffective for not raising it.  ECF No. 11 at 58.  Indeed, as Respondent indicates, Malave's sworn representations at the plea hearing, that he was guilty and that the facts in the police report and probable cause affidavit were true, belie his claims in this ground that, if counsel had investigated and examined statements the victim made in Facebook postings to Charlie Maholan, Malave would not have entered a plea and would have proceeded to trial.

Based on the foregoing, Malave did not exhaust this ground in state court and it is procedurally defaulted.  He cannot rely on <u>Martinez</u> to excuse his procedural default because his underlying IAC claim is not substantial and his post-conviction counsel did not perform deficiently by not raising it in the Rule 3.850 proceedings.  *See, e.g.*, <u>Hittson</u>, 759 F.3d at 1263.  This ground should be denied.

## <u>Ground 10</u>:  IAC – Cumulative Error

In his tenth ground, Petitioner Malave asserts that his trial counsel's "representation and numerous errors resulted in cumulative effects of a negative nature."  ECF No. 1 at 15.  As Respondent indicates, Malave raised a similar claim in the eighth ground of his Rule 3.850 motion.  Ex. B1 at 43; ECF No. 11 at 21.  Respondent asserts, however, that Malave abandoned that claim in his appeal of the order denying postconviction relief and the claim is thus unexhausted as the state courts did not have "one complete round" of review.  ECF No. 11 at 21.

The state post-conviction trial court denied the claim, making the following findings:

> Defendant argues that the cumulative effect of counsel's errors made the outcome of the trial unreliable.  Because Defendant's individual claims are either procedurally barred or without merit, his claim of cumulative error is without merit.  *See* <u>Griffin v. State</u>, 866 So. 2d 1, 22 (Fla. 2003) ("However, where individual claims of error alleged are either procedurally barred

> or without merit, the claim of cumulative error must fail."). Accordingly, Ground 8 is denied.

Ex. B1 at 101-02. On appeal, the First DCA affirmed without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99. The record supports the state courts' determination. *See* Wilson, 138 S. Ct. at 1192.

Petitioner has not shown that the state courts' adjudication of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Indeed, the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims. Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" and "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))). Moreover, as the state court explained, because each individual ground fails, this ground likewise fails and should be denied. *See, e.g.*, Morris v. Sec'y, Dep't of Corr., 677 F.3d

1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, United States v. Chalker, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

## Conclusion

Petitioner Eli Long Malave has not shown entitlement to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.  The Clerk of Court shall substitute Ricky D. Dixon for Mark S. Inch as Respondent.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore,

the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the § 2254 petition (ECF No. 1) be **DENIED.**  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk of Court shall substitute Ricky D. Dixon for Mark S. Inch as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on September 21, 2022.

S/  Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.